UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RAPHAEL HOEFFNER, et al.,

                    Plaintiffs,                        **ORDER**

            - against -                 09 CV 3160 (PKC)

JOE D'AMATO, et al.,

                    Defendants.
--------------------------------------------------------X

On July 22, 2009, plaintiffs Raphael Hoeffner, Anthony Longo, Anthony Tomaszewski, and Kenneth Reese, as participants and/or former participants of the Sand, Gravel, Crushed Stone, Ashes and Material Yard Workers Local Union No. 1175 LIUNA Pension Fund and Welfare Fund ("Local 1175 Funds"), on behalf of themselves and all persons similarly situated (collectively, "plaintiffs"), commenced this action against defendants Joe D'Amato, Frank Ombres, Alexander Miuccio, Frank P. DiMenna, and John Does 1-4, in their capacity as Trustees of the Local 1175 Funds, alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), based on defendants' alleged refusal to transfer plaintiffs' welfare and pension assets to the United Plan and Production Workers, Local 175 Pension Fund and Welfare Fund ("the Local 175 Funds"). (See Compl.[1] ¶¶ 1, 2).[2]

By letter dated May 15, 2013, plaintiffs submitted a letter seeking permission to file a motion for a Protective Order relating to certain non-party document and deposition subpoenas

---

[1]Citations to "Compl." refer to the Complaint, filed on July 22, 2009.

[2]On March 21, 2011, plaintiffs filed an Amended Complaint.

served by defendants. (See Pls.' 5/15 Ltr.[3] at 1). According to plaintiffs, defendants issued non-party subpoenas to the Local 175 Funds requesting discovery "concerning the 'administration' and 'establishment' of the Local 175 Funds, 'selection of the trustees,' and 'service providers' . . . ." (Id. at 2). Plaintiffs contend that the requested discovery is "voluminous," "harassing," "prejudicial," "would almost certainly be personally uncomfortable and embarrassing for any witness deposed about past alleged infractions," and "serves to delay the litigation, increasing litigation costs." (Id.) Plaintiffs argue that this discovery should be prohibited unless defendants can provide legal support for their "novel" argument that they are entitled to refuse to transfer plaintiffs' welfare and pension assets to the Local 175 Fund. (Id. at 1-2).

On June 26, 2013, the Local 175 Funds, which are not parties to this suit, filed a letter joining plaintiffs' May 15, 2013 request for a Protective Order. (See 6/26 Ltr.[4] at 1). The Local 175 Funds claim that defendants and the Local 175 Funds are in direct competition for members and that the information sought by defendants appears to be a fishing expedition for confidential, sensitive information that is unrelated to the ongoing litigation. (Id.) The Local 175 Funds further claim that the questions concerning the creation and governance of the Local 175 Funds "appear to be for the purpose of harassment" and are unduly burdensome. (Id. at 1-2).

On July 3, 2013, defendants filed a letter response, opposing plaintiffs' request to file a motion for a Protective Order and seeking attorney's fees and costs. (Defs.' 7/3 Ltr.[5] at 1). Defendants explain that plaintiffs' request is not properly before this Court because although

---

[3]Citations to "Pls.' 5/15 Ltr." refer to the letter filed by plaintiffs on May 15, 2013.

[4]Citations to "6/26 Ltr." refer to the letter filed by non-parties Local

[5]Citations to "Defs.' 7/3 Ltr." refer to the letter filed by defendants at July 3, 2013.

plaintiffs characterize the issue as a discovery dispute, the issue is actually a dispositive one. (Id.) Additionally, defendants contend that plaintiffs' concerns regarding the sensitive or potentially embarrassing nature of the discovery may be alleviated by a Confidentiality Order. (Id.) Defendants further argue that the discovery being sought is relevant "to both the claims and defenses in this action." (Id. at 1-2).

Specifically, defendants cite plaintiffs' allegations that defendants "have caused harm to the Local 175 Pension Fund and that [plaintiffs] are entitled to asset transfers to improve the Fund's asset base and defray administrative expenses." (Id. at 2). Defendants argue that this claim alone provides "ample basis for [d]efendants to inquire into Local 175 Pension Fund's benefits, governance[,] and the effects of transfers." (Id.) Defendants further contend that with respect to the Welfare Fund transfer, defendants must be allowed to inquire into the administration and governance of the Local 175 Welfare Fund "in order to demonstrate that they have no fiduciary claims and/or to ensure the asset transfers do not violate the very anti-inurement, exclusive benefit[,] and prudence standards which [p]laintiffs allege are the statutory basis for their transfer claims." (Id. at 3). In an effort to provide legal support for their claims, defendants cite to Bakery Workers Local 50 v. Bakery Workers Local 3, 561 F. Supp. 205 (E.D.N.Y. 1984), aff'd in part & rev'd in part by 733 F.2d 229 (2d Cir. 1984), which allegedly stands for the proposition that the discovery sought should not only be allowed, but in fact, is required as a matter of law. (Id. at 3-4).

After carefully considering the parties' arguments, the Court finds that the issue of the requested Protective Order is properly before the undersigned and that it must be fully briefed by the parties pursuant to the schedule provided below. However, based upon the arguments

3

provided thus far by the parties, the Court notes that, at this point, it is inclined to grant plaintiffs'

request for a Protective Order, absent some case authority[6] that supports defendants' contentions

in this dispute. Particularly in light of the district court's decision on January 13, 2012 that

defendants were to initiate the transfer process with respect to the Local 175 Pension Fund as a

result of College Point's change in collective bargaining representation, it is unclear to the Court

why this extensive discovery is required and why resolution of this transfer issue should be

further delayed to provide defendants with the highly confidential, and questionably relevant,

information they seek. (See 1/13/12 Order[7] at 19). Indeed, although the district court later

withdrew and vacated its January 13, 2012 Order, the district court warned the parties at that time

that it could not "conceive of entertaining re-argument on defendants' obligation to initiate its

transfer obligations pursuant to 29 U.S.C. § 1415." (See 3/22/12 Order[8] at 7). The Court further

admonished defendants that "they are not entitled to restart this litigation now that they have

hired new counsel" and reminded them that they "are bound by the actions of their prior chosen

representatives." (Id. at 6).

    Accordingly, plaintiffs are hereby Ordered to fully brief their request for a Protective

---

[6]Although defendants cite Bakery Workers Local 50 v. Bakery Workers Local 3 as providing support for their contentions, the Court fails to see how this case supports defendants' claims. 561 F. Supp. 205. While the court did express concern about a successor fund's members unduly benefitting from a funds transfer, the court made no suggestion that the transferring fund should be provided with confidential information about the successor fund to prevent such outcome. Rather, the court held that the successor fund was obligated to either demonstrate that the successor fund's members would not unduly benefit from the transfer, or keep the transferred reserves separate from that of the pre-existing members.

[7]Citations to "1/19/13 Order" refer to the Order issued by the Honorable Allyne R. Ross on January 19, 2013.

[8]Citations to "3/22/12 Order" refer to the Order issued by Judge Ross on March 22, 2012.

Order on or before **August 12, 2013**.   Defendants then have until on or before **August 19, 2013**.

Plaintiffs may file a reply, if any, on or before **August 26, 2013**.   Should non-party Local 175

wish to brief the issue as well, they are Ordered to follow the same briefing schedule.   The Clerk

is directed to send copies of this Order to the parties either electronically through the Electronic

Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       July 15, 2013

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

5