# GORLICK, KRAVITZ & LISTHAUS, P.C.
ATTORNEYS AT LAW
17 STATE STREET, 4TH FLOOR
NEW YORK, NEW YORK 10004-1501

BUFFALO OFFICE:
442 POTOMAC AVENUE
BUFFALO, NY 14213
(716) 881-0800
FAX (716) 881-0810

LAWRENCE A. KRAVITZ (1972-2002)
BRUCE L. LISTHAUS
BARBARA S. MEHLSACK*

*NY BAR ONLY

(212) 269-2500
FAX (212) 269-2540
WWW.GKLLAW.COM

NEW JERSEY OFFICE:
60 PARK PLACE, 6TH FLOOR
NEWARK, NJ 07102
(973) 824-5811

OF COUNSEL
ANDREW A. GORLICK*

October 15, 2013

Via ECF

Magistrate Judge Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *Hoeffner, et al. v. Joe D'Amato, et. Al.*
        Civil Action No. 09-3160 (PKC) (CLP)

Dear Magistrate Pollak:

  We regret the need to burden the Court with this communication, but it is necessitated by Plaintiffs' filing of Friday, October 11, 2013, seeking relief for Plaintiffs from the deadline for Plaintiffs' expert report on their Welfare Fund damages claims, without prior notice to Defendants.[1]

  The filing was made without any prior communication to Defendants' counsel at around the same time that respective counsel for Plaintiffs and Defendants were discussing, via email, the deadline for expert reports on Welfare Fund damages, which was set by stipulated order at October 11, 2013. Undersigned counsel for Defendants had advised Plaintiffs' counsel that Defendants needed more time for their expert report and that counsel expected to hear from Defendants' experts by late afternoon Friday as to the amount of time they would need. Counsel inquired as to the amount of time that Plaintiffs would need and no answer was forthcoming. Plaintiffs' counsel did not inform Defendants' counsel that she was then filing a letter motion regarding the "meet and confer" and requesting that the Court defer Plaintiffs' time to produce an expert report until Plaintiffs have had access to and time to digest the documents residing in Defendants' basement.

  Defendants are constrained to address below the allegations in Plaintiffs' letter concerning the circumstances of the "meet and confer" because Plaintiffs' letter inaccurately

---

[1] Defendants called Plaintiffs' counsel to inquire about the filing and was told that it was not intended to be filed as a motion. However the letter asks for relief and Defendants are constrained to treat it as such.

describes what transpired. But the bottom line is that Plaintiffs have decided that they cannot produce a damages report based on the data in Defendants' data base and must review the documents. Before writing this letter, Defendants called Plaintiffs to try to understand the issues. To date, Plaintiffs have identified three employers with respect to whose contributions to the Local 1175 Welfare Fund they are making claims. At the last status conference, Your Honor had authorized Plaintiffs to submit an additional interrogatory to Plaintiffs concerning the identity of any additional employers. On today's phone call, Defendants learned that Plaintiffs are now for the first time taking the position that they cannot identify any additional employers until and unless they have a chance to see what documents there are in Defendants' basement.

Defendants have no objection to deferring Plaintiffs' submission of an expert report on damages from the Welfare Fund until after Plaintiffs have reviewed and digested the basement documents. But Defendants respectfully submit that they should not have to submit their own reports until they are put on notice of the nature of Plaintiffs' claims with respect to each and every employer and employee involved. Defendants raised this issue with Plaintiffs and Plaintiffs have advised Defendants that they continue to insist on simultaneous reports as originally stipulated. Defendants respectfully submit that this is not an efficient way to proceed, as Defendants cannot produce an analysis of what they don't know needs analyzing. However, at the moment, Defendants agree that no expert reports should be produced until a date certain after Plaintiffs have had a chance to review the basement documents. Before the date is fixed for Defendants to produce a report, Plaintiffs should be required to identify the additional employers and employees, if any, as to whom they are making claims.

As to the method of review of the basement documents, Defendants understood at the last status conference, that Your Honor had indicated that Plaintiffs' counsel should be given access to the documents so that she might inspect and copy what she determined relevant and that the cost of copying those documents that counsel identified should be borne by Defendants. (It is Defendants position that many if not most of the documents identified so far are unreliable as they include unaudited employer submissions). Defendants' counsel has advised Plaintiffs that Defendants are agreeable to making arrangements to provide counsel with access.

Plaintiffs' counsel has apparently misunderstood what Defendants' counsel has represented about Defendants' data base and has misreported what transpired at the "meet and confer." As to the data base, Defendants' counsel has never represented that the electronic data base had complete Welfare Fund contribution data. Nor did Defendants' counsel represent that the data on the data base replicated or had any necessary relationship to the remittance reports stored in the basement boxes. To the contrary, Defendants have always made it clear that Welfare Fund contribution data by employer is on the data base only as far back as 1994. Defendants long ago produced the thousands of pages of hard copy Welfare Fund contribution reports generated by the data base going back to 1994. However, at the last status conference, Defendants' counsel advised that Defendants believed that it might be possible to use the older data in the data base concerning pension fund contribution hours as a surrogate for Welfare Fund

contribution hours. Also, individual work history on the data base going back to the 1970's and pension credit history when combined with historical rate data (which Defendants are attempting to reconstruct for Plaintiffs) may be sufficient enough to make it a waste of time and money to inspect and duplicate unaudited remittance reports.

As to the "meet and confer," Defendants IT experts offered to and did make themselves available for as long as Plaintiffs experts might need, for two purposes. The first was to answer any questions that Plaintiffs' experts might have about the data base. Plaintiffs' programming expert had reviewed the data base and posed a number of excellent questions that were in fact helpful to both sides. It is simply ludicrous to suggest that obtaining answers to experts' questions about how the data base works was not a valid and necessary purpose of the "meet and confer" to facilitate resolution of the question before the Court. The second purpose of the "meet and confer" -- the question before the Court at the status conference and the question that needed resolution to move this case forward -- was not to determine whether the Welfare Fund data was complete -- that it was not complete was acknowledged by Defendants from the get go, but whether other data on the data base could be combined and manipulated to obtain surrogate data that would serve Plaintiffs' needs (whatever they may be) as to welfare fund contribution data. For example, if there were pension hours for everyone for whom Plaintiffs sought welfare fund contribution history and rate data going back far enough then perhaps the data could be used as a surrogate for welfare fund contribution hours. Plaintiffs' counsel accuses Defendants of not being able to vouch for the completeness of the very old historical data on the data base. Of course Defendants couldn't vouch for the completeness of the pre-1994 data because the data is being offered for a purpose for which it is no longer used in the ordinary course of fund business. The same of course is true for the old remittance reports in the basement.

Apparently as a result of the meeting, Plaintiffs have decided that they have no choice but to review the documents in the basement. However, it appears that they are not ready to take Defendants up on their offer to make arrangements to do so. Plaintiffs want Defendants to review the documents to determine what to copy and bear the copying costs. Defendants respectfully submit that Defendants should not have to bear the cost of both reviewing the documents and copying them, especially as Defendants frankly do not even know what Plaintiffs are looking for at this point. Defendants also respectfully submit that given the lack of clarity as to Plaintiffs claims, that Defendants should not be compelled to produce a counter report to

Plaintiffs' expert damages report until such time as the Plaintiffs have identified their employer and employee claims and their expert report is produced.

Respectfully submitted,

GORLICK, KRAVITZ &
LISTHAUS, P.C.

Barbara S. Mehlsack