UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RALPH HOEFFNER, ANTHONY LONGO,
ANTHONY TOMASZEWSKI and
KENNETH REESE, as participants and/or
former participants of the SAND, GRAVEL,
CRUSHED STONE, ASHES AND
MATERIAL YARD WORKERS LOCAL
UNION NO. 1175 LIUNA PENSION FUND
AND WELFARE FUND, on behalf of
themselves and all persons similarly situated,

                        Plaintiffs,

                - against -

JOE D'AMATO, FRANK OMBRES,
ALEXANDER MIUCCIO, FRANK P.
DIMENNA and JOHN DOES 1–4, in
their capacity as Trustees of the Sand, Gravel,
Crushed Stone, Ashes and Material Yard
Workers Local Union No. 1175 LIUNA
Pension Fund and Welfare Fund,

                        Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
09-CV-3160 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

On June 2, 2022, this Court issued a Memorandum & Order (hereinafter, "June 2022 Order"), denying Defendants' motion to dismiss this action for lack of Article III standing. *See Hoeffner v. D'Amato*, 605 F. Supp. 3d 467 (E.D.N.Y. 2022). On June 16, 2022, Defendants moved for reconsideration of that Order, or in the alternative, a stay of discovery and a certification for interlocutory appeal. (*See* Defendants' Memorandum in Support of Motion for Reconsideration or to Certify for Interlocutory Appeal and Stay of Action ("Defs. Mem."), Dkt. 336-1.) By order dated July 29, 2022, the Court denied the request for certification and a stay, while reserving decision as to the reconsideration request. (*See* 7/29/2022 Memorandum & Order, Dkt. 345.) For the reasons explained herein, the Court now denies Defendants' motion for reconsideration.

1

# DISCUSSION[1]

## I.  Legal Standard

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (citations omitted).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (citations omitted); *see also In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 332 (E.D.N.Y. 2013) ("Reconsideration may only be granted when the [c]ourt did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the court.") (internal quotation marks and citations omitted).  "A party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Hicksville Water Dist. v. Jerry Spiegel Assocs.*, No. 19-CV-6070 (PKC) (RML), 2022 WL 4072683, at *2 (E.D.N.Y. Sept. 2, 2022) (citations omitted).  "The manifest injustice standard is, by definition, deferential to district courts and provides relief only in the proverbial rare case." *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (citations and internal quotation marks omitted).

Courts have repeatedly warned that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*,

---

[1] The Court presumes the parties' familiarity with the factual background and procedural history of this case.

684 F.3d 36, 52 (2d Cir. 2012) (cleaned up), as amended (July 13, 2012). Accordingly, a party moving for reconsideration "cannot rely upon facts, issues, or arguments that were previously available but not presented to the court, or reargue issues that have already been considered." *Omar v. 1 Front Street Grimaldi, Inc.*, No. 16-CV-5824 (LDH) (CLP), 2019 WL 7496569, at *2 (E.D.N.Y. Mar. 13, 2019) (quoting *Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523 (S.D.N.Y. 2014)).

## II. Reconsideration of the June 2022 Order is Unwarranted

Defendants' motion for reconsideration does not identify any intervening change of controlling law or any newly available evidence. Rather, Defendants largely reiterate arguments that the Court already considered and rejected in the June 2022 Order. Specifically, Defendants argue that the Court: (1) "erred in failing to follow controlling law," which "result[ed] in manifest injustice to Defendants" (*see* Defs. Mem., Dkt. 336-1, at 9), and (2) "turned a blind eye to the Protective Order in place since 2014[,] which has clearly prejudiced Defendants" (*id.* at 18). As discussed below, these arguments are without merit and do not constitute sufficient grounds for reconsideration.

### A. The Court's Order Did Not Overlook Controlling Law

Defendants' motion for reconsideration fails because it confuses the injury-in-fact prong of Article III standing with the separate question of whether a litigant has a cause of action under which to bring the lawsuit. In *Thole vs. U.S. Bank N.A.*, the Supreme Court held that a statutory cause of action under Employee Retirement Income Security Act ("ERISA"), standing alone, cannot constitute an injury for purposes of Article III standing. *See* 140 S. Ct. 1615, 1620–21 (2020). But *Thole* did not hold that a plaintiff's alleged injury-in-fact must also be a harm that matches a cause of action under ERISA. *See id.* Nor did the Supreme Court impose in *Lujan v. Defs. of Wildlife*, the additional requirement for Article III standing that Defendants have conjured

3

up. In that case, the Supreme Court held that a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," but it did not declare that the Article III standing analysis requires an invasion of a right that is legally protected *specifically* by the Endangered Species Act. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). In fact, the Supreme Court has not held in any post-*Lujan* decision that a plaintiff's alleged injury-in-fact for Article III standing must also be a harm that can satisfy a statutory cause of action. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law.").

To be clear, Defendants are not entirely to blame for conflating these two legal principles. Federal courts previously referred to the requirement that plaintiffs have a cause of action under an applicable statute as "statutory standing." *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("In the past, we suggested that this [cause-of-action requirement] was either 'a separate aspect of standing or a part of the prudential aspect of standing.'") (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 n.12 (2d Cir. 2003)). However, in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the Supreme Court explained that labeling this inquiry as "statutory standing" or "prudential standing" is a "misnomer" that is

4

"misleading, since the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case."  572 U.S. 118, 127, 128 n.4 (2014).  Since *Lexmark*, federal courts have "avoid[ed] this appellation" of "statutory standing" to reduce confusion.  *Am. Psychiatric Ass'n*, 821 F.3d at 359 (explaining that *Lexmark* clarified that "what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute'") (quoting *Lexmark*, 572 U.S. at 127–28); *see also City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1273 (11th Cir. 2015) (observing that after *Lexmark*, the "longstanding doctrinal label of statutory standing is . . . misleading").

In light of these changes, courts in this Circuit have routinely rejected arguments similar to those raised by Defendants in this motion that purport to challenge a party's Article III standing, but in fact contest whether there is a cause of action for the lawsuit.  *See, e.g.*, *Division 1181 Amalgamated Transit-Union New York Emps. Fund v. New York City*, 527 F. Supp. 3d 455, 463 (E.D.N.Y. 2020) ("Whether . . . contribution obligations are cognizable under ERISA is a merits question that should not be resolved on a 12(b)(1) motion for lack of subject matter jurisdiction."); *Villani v. Yale Univ.*, 333 F.R.D. 10, 16 n.1 (D. Conn. 2019) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's causes of action, for the concepts are not coextensive.") (citations omitted); *Medical Soc'y of New York v. UnitedHealth Grp.*, No. 16-CV-5625 (JPO), 2021 WL 4263717, at *3 (S.D.N.Y. Sept. 20, 2021) (rejecting a challenge to plaintiff's standing based on *Thole* and finding that defendants "miss the point by confusing the Article III requirement of injury in fact with the elements in a breach of contract action"); *In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018) (explaining that despite the requirements that an injury-in-fact be concrete and particularized and actual or

5

imminent, "an injury-in-fact need not be capable of sustaining a valid cause of action") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).

Here, Defendants' assertions that the Court's June 2022 Order "overlooks long established controlling Supreme Court and Second Circuit case law" or that it "misunderstands" the arguments Defendants raised in the original motion (s*ee* Defs. Mem., Dkt. 336-1, at 1, 10 n.10), reflects their confusion about injury-in-fact and causes of action. Most of the cases Defendants cite in their present motion are silent on Article III standing, and instead discuss only whether the plaintiffs in those cases have a cause of action. (*See, e.g.*, *id.* at 2–3 (citing *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006), *Janese v. Fay*, 692 F.3d 221 (2d Cir. 2012), *Massaro v. Palladino*, 19 F.4th 197 (2d Cir. 2021), *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), and *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015)); *id.* at 10 (citing *Massachusetts v. Morash*, 490 U.S. 107 (1989) and *Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372 (2d Cir. 1987)).). As explained above, these are distinct concepts, so these cases that Defendants claim the Court has "overlooked" are inapposite.[2]

The sole argument Defendants raise that has some merit relates to *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009). Defendants argue that the Court "overlooked entirely the Second Circuit['s] decision in *Kendall*." (Defs. Mem., Dkt. 336-1, at 14.) They assert that *Kendall* "expressly rejected a similar hypothetical higher level of benefits as a concrete harm sufficient to confer standing" (*id.*), because the plaintiff's claims were deemed to be "speculative and therefore [did] not constitute an injury-in-fact" (*id.* (quoting *Kendall*, 561 F.3d at 121–22)).

---

[2] The Court further notes Defendants "cannot rely upon" some of these cases to support reconsideration because, despite being "previously available," they were "not presented to the court" in the original motion to dismiss. *See Omar*, 2019 WL 7496569, at *2; *see also In Re Gentiva Sec. Litig*, 971 F. Supp. 2d at 332 ("Nor is it proper to raise new arguments and issues" on reconsideration.").

6

While it is true that the Court's June 2022 Order does not explicitly mention *Kendall*, the portions of that decision selectively relied upon by Defendants are inapposite to this dispute and would not have changed the outcome of the June 2022 Order.

Defendants ignore the fact that the panel in *Kendall* found that the plaintiff lacked standing because she could not "point to an identifiable and quantifiable pool of assets to which [she] had colorable claims," and instead "allege[d] an injury based on an as-yet-to-be-determined increase in benefits" that was dependent on whether the retirement plan at issue were to change its method of calculating accrued benefits. *Kendall*, 561 F.3d at 121. But here, Named Plaintiffs have clearly identified the pool of assets upon which they assert a colorable claim—namely, the aliquot share of assets attributable to contributions already made on behalf of the putative class members by their employers to the Local 175 Pension and Welfare Funds. *See Hoeffner v. D'Amato*, 605 F. Supp. 3d at 472–73. Moreover, Named Plaintiffs' injury is based not on being deprived of a *possible* increase in benefits in the *future*, but rather on harm they *already* suffered from decreased benefits and lower wages. *Id.* at 478–80.[3] *Kendall* is also distinguishable from this case because, there, the Second Circuit based its finding partly on the fact that the plaintiff conceded that the fund's calculation methodology was legal, *see* 561 F.3d at 122, whereas Named Plaintiffs have maintained during the 14 years of litigation in this case that Defendants' refusal to transfer the aliquot share of assets to the pension and welfare funds for their new union was illegal. Because

---

[3] It is telling that Defendants neglect to mention that in *Kendall* the Second Circuit found that the plaintiff had "state[d] an identifiable and quantifiable injury in her appeal of Claim VII," which challenged a different calculation methodology used by Defendants because she "provide[d] mathematical calculations to support her claim, and more importantly [because] her claim relates to a past and present reduction in accrued benefits." *See Kendall*, 561 F.3d at 122. Ultimately, the panel found that the plaintiff in *Kendall* waived her arguments for standing to bring Claim VII of her complaint. *Id.* Regardless, this dicta in *Kendall* that Defendants overlook actually supports the Court's holding from the June 2022 Order that Named Plaintiffs' injury-in-fact showing in this case is sufficient for Article III standing.

7

*Kendall* does not undermine the Court's analysis of Named Plaintiffs' alleged injury-in-fact, the Court's failure to address *Kendall* in the June 2022 Order had no effect on that decision. Therefore, Defendants' motion for reconsideration is denied.

### B. The Court's Order Did Not Result in Manifest Injustice for Defendants

Defendants further argue that the Court's June 2022 Order "overlooked entirely the fact that Defendants were precluded from seeking discovery on the issues discussed in the Franco affidavit and the resulting prejudice to Defendants." (Defs. Mem., Dkt. 336-1, at 14.) In addition, Defendants argue that the Court did not address their request that Named Plaintiffs be precluded from offering and relying on the Priolo Affidavit in light of the 2014 Protective Order. (Defendants' Reply Memorandum, Dkt. 340, at 5 n.1.)

Defendants' claim of prejudice is belied by the record. When Defendants expressly raised the 2014 Protective Order during the pre-motion conference for the anticipated motion to dismiss, the Court explained that filing a motion to dismiss at that point "wouldn't allow [the Court] to consider any evidence" from Defendants. (*See* Transcript of August 19, 2021 Pre-motion Conference ("Tr."), Dkt. 326, at 35:9–25.) When the Court pressed Defendants about whether the Court would have to accept facts not alleged in the complaint in order to rule on Defendants' motion to dismiss, Defendants declared that "as to the remaining pension law claims, there are no facts." (Tr. at 36:2–6.) Defendants asserted that their motion would prevail as a matter of law, and glibly dismissed "the idea of trying to resolve this all in a motion for summary judgment" as not "necessary." (Tr. at 35:1–3.) Although Defendants had every opportunity between June 2020, when *Thole* was issued, and the Court's June 2022 Order to request a modification of the 2014 Protective Order, Defendants never took such action.

Simply put, Defendants gambled that the Court would agree with their interpretation of *Thole*, but now cry foul because that gamble did not pay off. But reconsideration is not appropriate

8

when the claimed prejudice to the moving party "was entirely self-inflicted by their counsel" and resulted from strategic choices made in the course of litigation. *See Omar*, 2019 WL 7496569, at *1 (finding no manifest injustice in the court's order declining to stay proceedings where defense counsel moved to withdraw only two days before the deadline to object to a magistrate judge's report and recommendation granting plaintiffs' motion for class certification, even though defendants had stopped paying legal bills for more than 450 days). Because Defendants decided to move for dismissal even while the Protective Order was in place and without any attempts to amend the Protective Order, the Court finds no manifest injustice exists.[4]

## CONCLUSION

For the reasons stated herein, the Court denies Defendants' motion for reconsideration.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 24, 2023
Brooklyn, New York

---

[4] Defendants also assert that it was incorrect for the Court to find that they "direct[ed] this Court's attention to documents not previously in the record." (Defs. Mem., Dkt. 336-1, at 15 n.13 (quoting *Hoeffner*, 605 F. Supp. 3d at 476).) They contend that Form 5500s filed with the U.S. Department of Labor were "public documents" of which "the Court can take judicial notice." (*Id.*) In their motion to dismiss, Defendants refer to Form 5500s filed by the Local 175 Pension Fund for the proposition that this fund "is overfunded with $71,266,215 in total assets and a total actuarial present value of accumulated plan benefits of $56,705,000." (*See* Defs. Mot., Dkt. 331, at 17.) However, when a "court takes judicial notice of a document, it does so for its existence, 'but not for the truth of the matters asserted.'" *See Meola v. Recovery Sols., LLC*, No. 17-CV-1017 (MKB) (RER), 2018 WL 4660373, at *4 (E.D.N.Y. Sept. 28, 2018) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). Therefore, the Court could not take judicial notice of the Form 5500s for the purpose that Defendants sought to use these documents.