UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH HOEFFNER, ANTHONY LONGO, ANTHONY TOMASZEWSKI and KENNETH REESE, as participants and/or former participants of the Sand, Gravel, Crushed Stone, Ashes and Material Yard Workers Local Union No. 1175 LIUNA Pension Fund and Welfare Fund on behalf of themselves and all persons similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>JOE D'AMATO, FRANK OMBRES, RONALD VALDNER, ALEXANDER MIUCCIO, FRANK P. DIMENNA and/or their successors, and JOHN DOES 1- 4, in their capacity as trustees of the SAND, GRAVEL, CRUSHED STONE, ASHES and MATERIAL YARD WORKERS LOCAL UNION NO. 1175 LIUNA PENSION FUND and WELFARE FUND,<br><br>        Defendants. | Case No. 09-3160(PKC)(CLP) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PLAINTIFFS' PROPOSED CLASS NOTICES, AND CLASS ACTION SETTLEMENT PROCEDURE AS TO ALL REMAINING CLAIMS**

LAW OFFICES OF JENNIFER SMITH PLLC
165 Broadway, 23rd Floor
New York, NY 10006

and

LAW OFFICE OF DAVID W. NEW, PC
P.O. Box 447
Rutherford, NJ 07070

*Attorneys for Plaintiffs and the Putative Class*

# TABLE OF CONTENTS

 Page

PRELIMINARY STATEMENT .................................................................................................. 1

I.    FACTUAL AND PROCEDURAL BACKGROUND......................................................2

II.   THE SETTLEMENT .......................................................................................................5

    A.    Issuance of Notice to the Class ............................................................................ 5

    B.    Transfer of Welfare Assets and Pension Damages .............................................. 6

    C.    Release ................................................................................................................. 6

    D.    Attorneys' Fees and Litigation Costs................................................................... 7

    E.    Case Contribution Awards ................................................................................... 7

ARGUMENT .................................................................................................................................. 7

CONCLUSION............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Authors Guild v. Google, Inc.,*
 F. Supp. 2d, 2009 U.S. Dist. LEXIS 116175, 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009) ...... 9

*Chin v. RCN Corp.,*
 2010 U.S. Dist. LEXIS 31272, 2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010) ......................... 8

*Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ..................................................................................................... 8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
 No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ......................... 9

*In re Initial Pub. Offering Sec. Litig.*,
 226 F.R.D. 186 (S.D.N.Y. 2005) ......................................................................................... 8, 9

*In re PaineWebber Ltd. P'ships Litig.*,
 147 F.3d 132 (2d Cir. 1998) ..................................................................................................... 7

*In re Traffic Executive Ass'n -- Eastern Railroads*,
 627 F.2d 631 (2d Cir. 1980) ..................................................................................................... 9

*Matheson v. T-Bone Rest. LLC,*
 2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) ....................................................... 9

*Maywalt v. Parker & Parsley Petroleum,*
 67 F.3d 1072 (2d Cir. 1995) ..................................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) ................................................................................................... 7, 9

**Statutes**

29 U.S.C. § 1103 ............................................................................................................................ 3

29 U.S.C. § 1103(c)(1) ................................................................................................................... 6

29 U.S.C. § 1104 ............................................................................................................................ 3

29 U.S.C. § 1415 ............................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 30(b)(6) ................................................................................................................ 10

## Treatises

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004) .... 2, 8

NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.41 ........................................................... 7, 9

## PRELIMINARY STATEMENT

Named Plaintiffs Ralph Hoeffner ("Hoeffner"), Anthony Longo ("Longo"), and Anthony Tomaszewski ("Tomaszewski")[1] on behalf of themselves and all other persons similarly situated ("Plaintiffs"), respectfully submit this request for the Court's entry of an order:

(1) preliminarily approving a proposed settlement that will result in an asset transfer of $2,450,000 to be paid by Defendants to the non-party United Plant and Production Workers Local 175 Welfare Fund ("Local 175 Welfare Fund") and United Plant and Production Workers Local 175 Pension Fund ("Local 175 Pension Fund," collectively with the Local 175 Welfare Fund, the "Local 175 Funds"), inclusive of all costs, attorney fees, interest, case contribution awards and disbursements (the "Settlement Agreement");

(2) approving the form and manner of giving notice to members of the Class, defined below ("Class Notice"); and

(3) scheduling a hearing on Plaintiffs' motion for final approval of the Settlement (the "Fairness Hearing").

The proposed Settlement Agreement resolves all remaining claims contained in, and arising from, claims for transfers of welfare and pension fund assets in the above-captioned case (the "Action"), and would result in a final judgment.

Preliminary approval of the settlement will allow the parties to notify the Class, defined below (individual members of which are sometimes referred to as the "Class Members"), of the settlement and of their right to object, where applicable. Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but to make only a "preliminary

---

[1] The fourth named plaintiff, Kenneth Reese, is now deceased. Declaration of Jennifer S. Smith, Esq. dated March 18, 2024 ("Smith Decl.") at ¶ 22.

1

determination" of the "fairness, reasonableness, and adequacy" of the proposed settlement. *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION ("MCL"), § 21.632 (4th ed. 2004). As set forth herein, the Court should permit notice of the settlement to be sent to Class Members, as the settlement is fair and reasonable, and the product of extensive arm's length negotiations.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Named Plaintiffs initiated this Action on or about July 22, 2009, on behalf of themselves and all others similarly situated, against the Material Yard Workers Local Union No. 1175 Welfare Fund ("Local 1175 Welfare Fund"), and Material Yard Workers Local Union No. 1175 Pension Fund ("Local 1175 Pension Fund," collectively the "Local 1175 Funds") and their then-current trustees, all in their capacity as trustees of the Local 1175 Funds (collectively with the Local 1175 Funds, the "Defendants"). Declaration of Jennifer S. Smith dated March 18, 2024 ("Smith Decl.") at ¶ 2, Ex. A. As of the date the complaint was last amended on March 21, 2011, the named trustee Defendants were Joe D'Amato, Frank Ombres, Ronald Valdner, Alexander Miuccio, and Frank P. Dimenna.[2] Ex. B.[3]

As detailed in the class action complaint, Plaintiffs' First, Second, Third, Fourth and Fifth causes of action demanded an accounting of Plaintiffs' aliquot share of the Local 1175 Funds' assets, transfer of that aliquot share to the non-party Local 175 Funds, and damages in the amount of $500,000 due to the fund trustees' unlawful conduct in failing to execute the transfer, under theories of breach of fiduciary duty and unjust enrichment. Ex. A.

---

[2] Defendants advised in March 2024 that the current Board of Trustees for the Local 1175 Funds consists of Dominic Valdner, Joseph Todaro, Mark A. Rosen, and Joseph Greco.

[3] Unless otherwise indicated, the exhibit references will be to the exhibits attached to the accompanying Declaration of Jennifer S. Smith, in support of Plaintiffs' motion for preliminary approval.

2

In March 2011, Plaintiffs filed an amended complaint demanding the same relief under theories of breach of fiduciary duty, failure to comply with provisions of ERISA that require an asset transfer including 29 U.S.C. § 1103, 29 U.S.C. § 1104 and 29 U.S.C. § 1415, structural defect under the LMRA, and unjust enrichment. Ex. C. Like the original complaint, the amended complaint ("Complaint") demanded asset transfers from the Local 1175 Welfare Fund to the Local 175 Welfare Fund ("Welfare Claim"), and demanded asset and liability transfers from the Local 1175 Pension Fund to the Local 175 Pension Fund ("Pension Claim"). Although the claims are similar, the governing law is not identical. *See generally* Ex. C.

In August 2013, Defendants advised that they would execute all pension transfers demanded in the Complaint. Effective December 31, 2013, Defendants transferred pension liabilities and benefits for the Pension Subclass (defined below) to the Local 175 Pension Fund, along with $1,874,754 in assets to fund those pension liabilities. Smith Decl. at ¶ 10.

In October 2014, Defendants transferred $449,272.85 in prejudgment interest to the non-party Local 175 Pension Fund. *Id.* at ¶ 11.

These transfers were not accompanied by a settlement agreement or court order.

However, the transfers did effectively moot Plaintiffs' Pension Claims, except for ongoing disputes over the correct amount of prejudgment interest and attorney fees to be paid from the Local 1175 Pension Fund to the Local 175 Pension Fund (the "Remaining Pension Damages").

Following the pension transfers, Defendants continued to dispute the Remaining Pension Damages. Defendants also continued to dispute the Welfare Claims. (Welfare Claims and Remaining Pension Damages collectively referred to as the "Remaining Claims"). *Id.* at ¶ 12.

Both before and after the pension transfers, the parties engaged in extensive discovery, involving production of more than 100,000 pages of discovery covering more than 50 years of

3

fund records, depositions of Defendants and their actuaries, non-party discovery, and exchange of primary and rebuttal expert reports. *Id.* at ¶ 13.

In August 2018, Plaintiffs moved for class certification. (Doc 287) The Court certified the class in March 2019, including certification of two subclasses, defined as follows:

> Pension Subclass: All persons who were (i) employees of the employers College Point, Grace Industries and/or Willets Point, (ii) vested participants in the Local 1175 Pension Fund, and (iii) whose nonforfeitable benefits were transferred to the Local 175 Pension Fund in December 2013.
>
> Welfare Subclass: All employees and former employees of employers College Point Asphalt Corporation, Willets Point Contracting Corporation, and Grace Industries, LLC who were participants in the Local 1175 Welfare Fund and who became participants eligible for benefits in the Local 175 Welfare Fund as a result of a certified change in collective bargaining representative in 2005, excluding all persons who currently receive or become eligible to receive benefits from the Local 1175 Welfare Fund.

(Doc. 299)

In November 2019, Magistrate Judge Pollak ordered the parties to engage in mediation to explore the possibility of settlement. Unfortunately, mediation discussions were unsuccessful, and talks broke down in 2021. *Id.* at ¶ 16.

Between 2021 and 2023, the parties engaged in significant motion practice and nonparty discovery. *Id.* at ¶ 17.

In 2023 the parties resumed direct negotiations toward a settlement. January 2024, the parties achieved a settlement concerning the Remaining Claims. The parties executed the Settlement Agreement on or about March 18, 2024. *Id.* at ¶¶ 18-19. [4]

---

[4] Defendants have provided a written resolution authorizing their Fund Administrator, Connie Henry, to sign all settlement documents on Defendants' behalf, thereby binding Defendants, and have represented that this authorization is valid under the relevant trust documents. Smith Decl. at § 24, **Exhibit F**.

4

## II.  THE SETTLEMENT

The terms of the settlement are discussed below. A copy of the settlement agreement is annexed to the Smith Declaration as Exhibit D ("Settlement Agreement").

### A.  Issuance of Notice to the Class

Named Plaintiffs and their counsel believe that the proposed Settlement Agreement is a laudable result that is in the best interests of the Class. Absent this Settlement, the Class faced the risk and delay of protracted litigation, and the potential that any recovery from Defendants could be less favorable, or significantly delayed.

The Settlement Agreement anticipates entry of the accompanying Order, approving the Settlement Agreement and the manner and form of providing notice to the Class. The proposed Class Notices inform Class Members of the scheduling of the Fairness Hearing to consider, *inter alia*, final approval of the Settlement Agreement. They inform Class Members of the opportunity to object to the terms of the proposed Settlement, and Case Contribution Award. In addition, the Class Notices provide Class Members with the opportunity to review their pension records with the Local 1175 Pension Fund, and ensure the correct pension credits, if any, were transferred to the Local 175 Pension Fund in 2013. Ex. D at Appendix D-1, D-2.

Inasmuch as (i) the proposed Settlement Agreement is more than reasonable; (ii) the plan for giving notice of the Settlement Agreement complies with applicable law, and due process, and (iii) Defendants consent to this request, Named Plaintiffs respectfully request that the proposed Order be entered by this Court.[5]

---

[5] As stated in the Settlement Agreement, Defendants maintain that they are consenting to Plaintiffs' motion for the sole purpose of effectuating the Settlement. Should the Court decline to give final approval to the Settlement Agreement, it is agreed that Defendants are not and will not be bound by the factual allegations and legal conclusions made by Plaintiffs in this motion, solely by virtue of their inclusion in this motion.

5

### B.     Transfer of Welfare Assets and Pension Damages

The Settlement Agreement provides that the Defendants will transfer $500,000 from the Local 1175 Welfare Fund to the non-party Local 175 Welfare Fund and $1,950,000.00 from the Local 1175 Pension Fund to the non-party Local 175 Pension Fund in satisfaction of the Remaining Claims ("Cash Transfer"). Defendant Local 1175 Welfare Fund will further issue checks in the amount of $1,500 to each of the surviving Named Plaintiffs as Case Contribution Awards, such amounts to be subtracted from the Local 1175 Welfare Fund's portion of the Cash Transfer. Ex. D at ¶ 4.

Other than the Case Contribution Awards, no payments will be made directly to any Class Members. *Id*. at ¶ 4. However, ERISA requires that the Local 175 Welfare and Pension Funds' plan assets "shall be held for the exclusive purposes" of defraying reasonable administrative costs and "providing benefits to participants in the plan and their beneficiaries," a group that includes the Class Members. 29 U.S.C. § 1103(c)(1).

No additional payments will be made to Class Counsel in connection with the Settlement Agreement. *Id*. at ¶ 4.

### C.     Release

The Settlement Agreement includes Releases executed by Named Plaintiffs and Defendants. The releases are being held in escrow, and shall be deemed released from escrow once the parties satisfy their obligations under the Settlement Agreement. *Id*. at ¶ 6.

The proposed Preliminary Order provides that absent Class Members who fail to object to the Settlement Agreement as provided in the Notices, or whose objections are withdrawn or overruled, are bound to the Releases included in the Settlement Agreement. Ex. E at ¶¶ 13-14.

### D. Attorneys' Fees and Litigation Costs

Named Plaintiffs' attorneys' fees and reasonable costs and disbursements have been paid on an ongoing basis during the litigation. Defendants shall have no liability for attorneys' fees and costs over and above the payments provided for in the Settlement Agreement. Ex. D at ¶ 4.

### E. Case Contribution Awards

Subject to Court approval, Named Plaintiffs Ralph Hoeffner, Anthony Longo, and Anthony Tomaszewski will each apply to the Court for a Case Contribution Award Payment of no more than $1,500 in recognition of the considerable services they rendered on behalf of the Class. Defendants will not oppose such applications. Ex. D at ¶ 4. Their services included, but were not limited to, informing Class Counsel of the facts initially and as the case progressed; providing Class Counsel with relevant documents in their possession; responding to interrogatories; assisting Class Counsel to prepare for depositions; sitting for depositions; and participating in evaluation of the proposed Settlement Agreement. Smith Decl. at ¶ 23.

## ARGUMENT

The settlement of class action litigation is favored by public policy and strongly encouraged. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (highlighting the "strong judicial policy in favor of settlements, particularly in the class action context") (*quoting In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also* NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.41 ("[t]he compromise of complex litigation is encouraged by the courts and favored by public policy.") This Court has discretion as to whether to approve a proposed class action settlement. *Maywalt v. Parker & Parsley Petroleum,* 67 F.3d 1072, 1079 (2d Cir. 1995).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a "fairness hearing." First, the court reviews the proposed terms of

7

settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (citation omitted). During this first step, a court must consider whether the settlement warrants preliminary approval, providing notice to the proposed class and the scheduling of a final settlement hearing. In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants "final approval." *Id.* at 200 n. 71; *see also In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 79, 87 (S.D.N.Y. 2007).[6]

Preliminary approval of a settlement agreement requires only a "preliminary determination" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation of the settling parties. "*See Federal Judicial Center, Manual for Complex Litigation* ("MCL"), § 21.632 (4th ed. 2004). As part of this preliminary determination, the district court must evaluate whether the proposed settlement contains" obvious deficiencies, such as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys, and whether any circumstances create doubts about the fairness of the proposed settlement. *Chin v. RCN Corp.,* 2010 U.S. Dist. LEXIS 31272, 7-9, 2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010), *quoting Manual For Complex Litigation* § 21.632 (4th ed.) (2004). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations

---

[6] A final approval determination is based on an analysis of nine factors established in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The Grinnell factors are: (1) the complexity, expense and likely duration of the litigation being settled; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the litigation as a class action through trial; (7) ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement to a possible recovery in light of the attendant risks of litigation. *Id.*

between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks omitted). Absent evidence of fraud or collusion, where a settlement is achieved through arm's-length negotiations by experienced counsel, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Matheson v. T-Bone Rest. LLC,* 2011 U.S. Dist. LEXIS 143773, at *11 (S.D.N.Y. Dec. 13, 2011) (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)).

Preliminary approval of a class action settlement "is not tantamount to a finding that the settlement is fair and reasonable." *In re Traffic Executive Ass'n -- Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). In fact, "a full fairness analysis is neither feasible nor appropriate" when evaluating a proposed settlement agreement for preliminary approval. *Authors Guild v. Google, Inc.,* F. Supp. 2d, 2009 U.S. Dist. LEXIS 116175, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009). To grant preliminary approval, the court need only find that there is "probable cause" to submit the [settlement] to class members and hold a full-scale hearing as to its fairness. *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG ON CLASS ACTIONS (4th ed. 2002), at § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

The terms of the proposed Settlement here are "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87. Although Named Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Action against the Defendants are meritorious, continued litigation poses the risk that a lesser recovery could result, and even if Plaintiffs prevailed, protracted appeals are likely. The Settlement was negotiated at arm's length by experienced counsel, who were well-

9

informed of the facts and issues in the Action. The negotiations were aided at times during the litigation by the Mediator, Patrick Michael McKenna. Moreover, the settlement was reached after meaningful discovery, including written discovery, Rule 30(b)(6) depositions of Defendants' representatives, and depositions of Named Plaintiffs.  Smith Decl. at ¶¶ 8-9, 13-14, 16-18.

The Settlement provides substantial benefits to the Class, namely, a reduction in duplicative administrative costs, the transfer of $1,950,000 in assets to the Local 175 Pension Fund, and the transfer of $500,000 in assets to the Local 175 Welfare Fund, in which Named Plaintiffs and Class Members participate.  The infusion of such funds into the Local 175 Funds will improve the financial status of the plans from which they currently receive pension and welfare (including medical) benefits, thereby assuring continued benefit levels and healthy reserves.

The Settlement permits members of the Class a right to object if they do not approve of the Settlement, and avoids the delay, expense and uncertainty of continued litigation.  Members of the Pension Subclass are further afforded the right to review their pension records with the Local 1175 Pension Fund and request correction of any errors.

The Named Plaintiffs have not received unduly preferential treatment, and the Settlement Agreement results in a Cash Transfer that is within the range of reasonableness, taking into account the possibility of recovery and weighed against the attendant risks of further litigation. Additionally, there is no basis to believe that Plaintiffs' Counsel colluded with Defense Counsel in the pursuit of attorney's fees. Under these circumstances, the Settlement Agreement is within the "range of possible approval."

## CONCLUSION

The Named Plaintiffs respectfully request that the Court enter an order (i) preliminarily approving the proposed Settlement Agreement as within the range of possible fairness,

10

reasonableness and adequacy; (ii) approving the proposed form and manner of Class Notices to Class Members; and (iii) scheduling a Final Approval (Fairness) Hearing to consider Named Plaintiffs' motion for final approval of the Settlement Agreement. A proposed Order is being submitted herewith.

Dated:  New York, New York
        March 18, 2024

                                 LAW OFFICES OF JENNIFER SMITH PLLC

By:      /s Jennifer S. Smith
       Jennifer S. Smith
       165 Broadway, 23rd Floor
       New York, NY  10006
       T:  (347) 342-2213

                  - and -

David W. New
LAW OFFICE OF DAVID W. NEW, PC
P.O. Box 447
Rutherford, NJ  07070
T:  (862) 210-8220
*Attorneys for Plaintiffs*