UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

RALPH HOEFFNER, *et al.*,

Plaintiffs,

- against -

JOE D'AMATO, *et al.*,

Defendants.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
09-CV-3160 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

Named Plaintiffs Ralph Hoeffner ("Hoeffner"), Anthony Longo ("Longo"), and Anthony Tomaszewski ("Tomaszewski") (collectively, "Plaintiffs"),[1] on behalf of themselves and the settlement class ("Settlement Class"), seek final approval of the settlement agreement (the "Settlement" or "Agreement" or "Settlement Agreement"), case contribution awards, and release of claims. (Dkt. 385.) Plaintiffs, represented by the Law Offices of Jennifer Smith PLLC and the Law Office of David W. New, PC ("Class Counsel"), brought this class action in 2009 against Defendants Material Yard Workers Local Union No. 1175 Pension Fund ("Local 1175 Pension Fund"), Material Yard Workers Local Union No. 1175 Welfare Fund ("Local 1175 Welfare Fund"), and their then-current trustees Joe D'Amato, Frank Ombres, Ronald Valdner, Alexander Miuccio, and Frank P. Dimmena (collectively, "Defendants").

Plaintiffs alleged, *inter alia*, breach of fiduciary duty, failure to comply with provisions of the Employee Retirement Income Security Act of 1974 that require asset transfers, structural defect under the Labor Management Relations Act, and unjust enrichment. On August 5, 2024, the Court

---

[1] Named Plaintiff Kenneth Reese, though included in the Complaint and the Amended Complaint, is deceased. (Decl. of Jennifer Smith, Dkt. 385-1 ("Smith Decl.") ¶ 39.)

granted Plaintiffs' motion for preliminary approval of the Settlement Agreement. (Dkt. 381.) For the reasons stated below, the Court grants Plaintiffs' consent motion for final approval of the Settlement Agreement, case contribution awards, and release of claims.

## BACKGROUND

### I. Factual Background and Procedural History

This class-action lawsuit was brought by Plaintiffs, on behalf of themselves and all Settlement Class Members, seeking transfer of pension assets, credits, and liabilities from the Defendant Local 1175 Pension Fund to Non-Party United Plant and Production Workers Local 175 Pension Fund (the "Pension Claims"), and transfer of assets from Defendant Local 1175 Welfare Fund to Non-Party United Plant and Production Workers Local 175 Welfare Fund, (the "Welfare Claims").

On July 22, 2009, Plaintiffs filed a class-action complaint, alleging breach of fiduciary duties. (Compl., Dkt. 1.)[2] Plaintiffs filed an Amended Complaint on March 21, 2011. (Am. Compl., Dkt. 53.) On June 1, 2011, Defendants moved for summary judgment. (Dkt. 60.) Plaintiffs cross-moved for summary judgment on July 19, 2011. (Dkt. 64.) On January 19, 2012, the Court issued an Order granting in part and denying in part both motions. (Dkt. 72.) Defendants subsequently moved for reconsideration. (Dkt. 82.) Though the Court denied the reconsideration motion on March 19, 2012, it nevertheless withdrew and vacated its previous January 2012 Order. (Dkt. 90.) The parties then engaged in extensive document discovery and depositions. On December 7, 2012, the parties engaged in a settlement conference before Judge Pollak, but did not reach agreement. (Dkt. 98.)

---

[2] This case was originally assigned to the Honorable Allyne R. Ross. It was reassigned to the undersigned on April 19, 2013. (4/19/2013 Dkt. Order.)

Defendants subsequently conceded the Pension Claims and transferred all pension liabilities for the relevant Class Members to Non-Party United Plant and Production Workers Local 175 Pension Fund ("Local 175 Pension Fund"), along with $1,874,754 in assets to fund those pension liabilities (the "Pension Transfer"). (Smith Decl. ¶ 12.) Following the Pension Transfer, the parties continued to dispute (i) the Welfare Claims, and (ii) the appropriate amount of attorneys' fees and prejudgment interest that should accompany the Pension Transfer. In October 2014, Defendants transferred $449,272.85 in prejudgment interest to Non-Party Local 175 Pension Fund. (*Id.* ¶ 13.) In all, discovery involved production of "more than 100,000 pages . . . covering more than 50 years of fund records, depositions of Plaintiffs and Defendants[,] and non-party discovery." (*Id.* ¶ 15.) Further, in 2017 and 2018, the parties exchanged primary and rebuttal expert reports concerning Plaintiffs' claims for a transfer of welfare assets. (*Id.* ¶ 16.)

The Court certified the class on March 29, 2019, including certification of the two subclasses: (1) Pension Subclass, and (2) Welfare Subclass. (Dkt. 299 at 30.) The Court defined the two subclasses as follows:

> "Pension Subclass" was defined as "All persons who were (i) employees of the employers College Point, Grace Industries and/or Willets Point, (ii) vested participants in the Local 1175 Pension Fund, and (iii) whose nonforfeitable benefits were transferred to the Local 175 Pension Fund in December 2013." (*Id.*)

> "Welfare Subclass" was defined as "All employees and former employees of employers College Point Asphalt Corporation, Willets Point Contracting Corporation, and Grace Industries, LLC who were participants in the Local 1175 Welfare Fund and who became participants eligible for benefits in the Local 175 Welfare Fund as a result of a certified change in collective bargaining representative in 2005, excluding all persons who currently receive or become eligible to receive benefits from the Local 1175 Welfare Fund." (*Id.*)

In 2023, following attempts at mediation and significant motion practice that spanned multiple years, the parties "resumed direct negotiations toward a settlement." (Smith Decl. ¶ 20.)

The parties executed the Settlement Agreement on March 18, 2024, and the Court granted preliminary approval of the Agreement on August 5, 2024 ("Preliminary Approval Order"). (Dkts. 378, 381.)  Class notifications regarding the settlement and final approval hearing were effected pursuant to the Preliminary Approval Order.  (Dkts. 385-8, 385-11.)  On December 2, 2024, Plaintiffs filed a consent motion for final approval of the class action settlement.  (Dkt. 385.) The final approval hearing took place on December 16, 2024.  (12/16/2024 Min. Entry; *see generally* Dkt. 388 ("Fairness Hr'g Tr.").)

## II.     The Settlement Agreement, Fund Allocation, and Notification to Class

### A.     Terms of the Settlement Agreement

The essential terms of the Settlement Agreement are as follows.  (*See generally* Settlement Agreement, Dkt. 385-5.)  The total Settlement amount is $4,774,026.85, "inclusive of all costs, attorney fees, disbursements, prejudgment interest and case contribution awards."  (Dkt. 385-14 ("Class Counsel Mem.") at 1.)  Of this sum, $2,324,026.85 has already been paid by Local 1175 Pension Fund—$1,874,754 was paid in or about December 2013 and $449,272.85 was paid in October 2014.  (*Id.* at 3.)  Once the Settlement is approved, Defendant Local 1175 Pension Fund will pay a remaining $1,950,000 to Non-Party Local 175 Pension Fund.  (Settlement Agreement, Dkt. 385-5 ¶ 4.)  In addition, Defendant Local 1175 Welfare Fund will pay a remaining $500,000 to Non-Party Local 175 Welfare Fund.[3]  (*Id.*)  Case contribution awards will come out of this $500,000 amount, with Defendant Local 1175 Welfare Fund issuing checks of $1,500 to each of the surviving Named Plaintiffs Hoeffner, Longo, and Tomaszewski.  (*Id.*, Class Counsel Mem. at 6.)  Other than the case contribution awards, no payments will be made directly to any Class

---

[3] The total amount of money to be transferred after final approval of the Settlement is thus $2,450,000.  (Class Counsel Mem. at 1.)

Members. (Class Counsel Mem. at 6.) The Settlement Agreement also provides that Class Members will fully and irrevocably release all parties in this case from any claims, as described within the Settlement. (Settlement Agreement, Dkt. 385-5 ¶ 7.)

After the Court finally approves the Settlement, Defendants shall wire the Settlement amount to Plaintiffs' counsel within 12 business days. (*Id.* ¶ 4.) Within one business day of the Non-Party Local 175 Welfare and Pension Funds receiving the transfer, Class Counsel shall file a stipulation of dismissal with the Court. (*Id.* ¶ 8.)

No part of the $4,774,026.85 Settlement Amount will be paid to attorneys. (Dkt. 385-7 ("Class Notice") at 5.) Plaintiffs' attorneys' fees, costs, and disbursements have been paid on an ongoing basis during the litigation by the Local 1175 Funds, and those expenses were quantified and taken into account in the settlement negotiations for a lump sum payment covered by the transfer of assets from the Local 1175 Funds to the Local 175 Funds. (Settlement Agreement, Dkt. 385-5 ¶ 4; Smith Decl. ¶¶ 31–35.)

## B. Notice to the Class

The Settlement Class consists of 21 individuals. (Settlement Agreement, Dkt. 385-5 at ECF 18.) As per the Preliminary Approval Order, two class notices were prepared, one for mailing to each individual Class Member and one for publication. (*See* Dkts. 385-7, 385-9.) Within 15 business days after the Court issued the Preliminary Approval Order, Named Plaintiffs mailed one copy of the Class Notice to the last-known address of each Class Member. (Dkt. 385-8.) Further, one copy of the Class Notice was posted in Non-Party Local 175 Fund's offices for 90 days. (Dkt. 385-11.) Defendants also caused one copy of the Class Notice to be posted in Local 1175 Fund's offices and in Non-Party LIUNA Local 731's office for 90 days. (Settlement Agreement, Dkt. 385-5 ¶ 5; Dkt. 385-10.) Objections to the Settlement had to be postmarked no later than

November 16, 2024 to be considered valid.  (Dkt. 381 ¶¶ 11, 13.)  As of December 19, 2024, no objections were received from Class Members.  (Dkt. 384.)

## DISCUSSION

### I.   The Settlement Is Substantively and Procedurally Fair

Under Second Circuit precedent, as recently established in *Moses v. New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023), both the Rule 23(e)(2) factors and the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"), weigh in favor of finding that the Settlement is procedurally and substantively fair, and warrants final approval.

#### A.      Rule 23(e)

Rule 23(e) "sets forth the standards and procedures that apply to class action settlements." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*In re Payment Card I*), 330 F.R.D. 11, 27 (E.D.N.Y. 2019).  Pursuant to Rule 23(e), approval of a class action settlement generally occurs in two stages: (1) the preliminary approval stage, where the Court makes an initial evaluation of the Settlement's fairness before notifying the class, and (2) the final approval stage when class members and the parties are given an opportunity to be heard before the Court approves the Settlement.  *See id.*  At the final approval stage, a district court may approve a class action settlement only upon "finding that it is fair, reasonable, and adequate."  *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)).  To make that determination, a court should expressly evaluate four "primary procedural considerations and substantive qualities that should always matter" in its "holistic[]" review of a proposed settlement.  *Id.* at 242–43 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (the "2018 Advisory Note")).  These four considerations include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,'" *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 242, assessing "[t]he relief that the settlement is expected to provide to class members . . . ," *In re Payment Card I*, 330 F.R.D. at 29 (alteration in original) (quoting 2018 Advisory Note).

In *Moses*, the Second Circuit emphasized that the amended Rule 23(e) "now mandates courts to evaluate factors that may not have been highlighted in [this Circuit's] prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements." 79 F.4th at 243. The panel explained that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length . . . because the rule 'does not suggest that an affirmative answer to that one [factor] creates a favorable presumption on review of the other three.'" *Id.* (alteration in original) (citation omitted). Regarding substantive fairness, while courts in this Circuit historically "evaluate[d] substantive fairness [by] considering

the nine *Grinnell* factors," which largely overlap with the revised Rule 23(e)(2), the *Moses* court emphasized that the "rule now requires courts to expressly consider two core factors [under Rules 23(e)(2)(C)–(D)] when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Id.* at 244 (second alteration in original) (citation omitted). Importantly, the *Moses* panel noted that "the revised Rule 23(e)(2) does not displace" the *Grinnell* factors that courts have traditionally applied, "which remain a useful framework for considering the substantive fairness of a settlement." *Id.* at 243. The nine *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
>
> (9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

### B.    The Settlement is Procedurally Fair

To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B). "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class

and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card I*, 330 F.R.D. at 30 (quotation omitted). First, to be adequate, a proposed class "representative must have [(1)] an interest in vigorously pursuing the claims of the class, and [(2)] must have no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig. (In re Payment Card)*, 827 F.3d 223, 231 (2d Cir. 2016) (quotation omitted); *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[D]istrict courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.").

Here, there is no hint of conflict among Plaintiffs and the class in the record before the Court. To the contrary, the interests of Plaintiffs are substantively indistinguishable from any of the Class Members: their claims for relief rise or fall together. As to the second prong, Class Counsel are well-qualified and fully capable of litigating this matter. Lead counsel Jennifer Smith is known to the Court as an experienced and vigorous litigator in this area based on her representation in this case and in *Palumbo v. Fasulo*, No. 07-CV-0797 (PKC) (RML), 2023 WL 9119556 (E.D.N.Y. Dec. 1, 2023). Thus, the Court has no concern about Class Counsel's ability to adequately prosecute this matter.

Further, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (cleaned up) (citation omitted). Here, the parties participated in a court-ordered mediation between late 2019 and early 2021 with Patrick Michael McKenna, Esq., and then in direct negotiations in 2023 and early 2024. (Class Counsel Mem. at 9.) Furthermore, the settlement negotiations followed years of vigorous litigation between the parties. Based on these

facts, the Court concludes that the proposal was negotiated at arm's length and that there was procedural fairness in reaching the Settlement Agreement.

## C. The Settlement is Substantively Fair

In evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rules 23(e)(2)(C)–(D): "the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244. In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the Settlement. *Id.*

### 1. Rule 23(e)(2)(C): Adequacy of Class Relief

In assessing whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), a district court must take into account several factors, including: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

The first statutory factor under Rule 23(e)(2)(C)(i) largely overlaps with the first *Grinnell* factor "complexity, expense, and likely duration of the litigation." *Grinnell*, 495 F.2d at 463. As Class Counsel note, this mater has settled "after 15 years of litigation." (Class Notice at 4.) Moreover, discovery involved production of "more than 100,000 pages . . . covering more than 50 years of fund records, depositions of Plaintiffs and Defendants[,] and non-party discovery." (Smith Decl. ¶ 15.) By contrast, the Settlement provides "relief without the delay, risk, and uncertainty of trial and continued litigation." *In re Namenda Direct Purchaser Antitrust Litig.*,

462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020). Thus, the first factor supports approving the Settlement.

The second statutory factor requires courts to look at "the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "To warrant approval, the plan of allocation must also meet the standards by which the settlement [is] scrutinized—namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card I*, 330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). While the plan of distribution must be fair, it "need not be perfect." *Id.* (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)).

Here, "[t]he identity of specific Class Members was established by verifying a specific employer's withdrawal from the Local 1175 Funds, and verifying that employer's subsequent contributions for that same bargaining unit to the Local 175 Funds." (Smith Decl. ¶ 24.) Defendants sent the last-known addresses of Class Members to Plaintiffs' counsel and each Class Member was mailed a class notice on August 13, 2024. (Class Counsel Mem. at 5.) No class notices were returned as undeliverable. (*Id.*) The Class Notices informed Class Members of their right to object to the terms of the proposed Settlement and Case Contribution Awards. (*Id.* at 11.) During the final approval hearing, Class Counsel clarified that, while there is no specific "allocation formula" that will be followed in this case, the transfer of money into the funds will positively benefit workers. (Fairness Hr'g Tr. at 15:5–6.) With regards to the pension fund, the settlement amount will increase the likelihood that the 175 Pension Fund "will be able to pay all vested benefits when they become due," and may eventually result in more take-home pay for

workers. (*Id.* at 16:1–17:23.) As Class Counsel further represented during the final approval hearing, given that the new pension fund, Local 175, took on liabilities when the workers transferred in—including "the pension liabilities to be paid, the underfunding, vis-à-vis the employer, and the additional welfare fund costs for the workers who transferred in, and not to leave out the retiree medical obligations that come with those workers that are triggered by their pension credits"—the transfer of assets negotiated under the Settlement will provide "a real-world-dollar benefit to the participants in the funds, albeit that we cannot quantify the exact dollar number." (*Id.* at 23:16–24:14.) For these reasons, the Court finds that the method of processing class members' claims and the plan of distribution is reasonable, fair, and adequate.

The third statutory factor, Rule 23(e)(2)(C)(iii), directs courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). In this case, attorneys' fees and expenses have been paid on an ongoing basis by the Local 175 Funds and no part of the $4,774,026.85 Settlement Amount will be paid to attorneys, including Class Counsel. (Smith Decl. ¶¶ 31–35; Class Notice at 5.) There are thus no "proposed" attorneys' fees before the Court on this motion. That said, the Court has considered Class Counsel's representation that the attorneys' fees and costs incurred in this litigation can be reasonably estimated to be around $1,425,000. (Dkt. 387.) For the reasons described below, *see infra* Discussion Section II, the Court finds this amount to be reasonable.

Finally, the fourth statutory factor mandates that courts consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(c)(iv) & (e)(3). Here, the Court finds that Rule 23(e)(2)(C)(iv), has no bearing because the Settlement Agreement is the "entire agreement" between the parties and supersedes all other agreements. (Settlement Agreement, Dkt. 385-5 ¶ 14.)

## 2. Rule 23(e)(2)(D): Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In evaluating this factor, courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245 (quoting 2018 Advisory Note). This case is unusual in that there is no "average recovery" amount for each Class Member as there would be with traditional class-action lawsuits. That said, the apportionment of relief, though it cannot be precisely calculated, is still equitable. The pension benefits, for example, are "specifically weighted to each worker because the pension liabilities that are transferred consist of the benefits earned by each individual worker." (Fairness Hr'g Tr. at 25:5–8.) And though the welfare benefits are calculated using "the employer's share over a number of years for all its workers, [and are] not dependent on the specific person," (*id.* at 26:13–14), the benefits received by any one worker is still individualized in nature since "[t]he claims that are going to be incurred [for the welfare fund] depend on the health of the various people that [the Fund is] paying for," (*id.* at 27:9–12). Class Members will thus be treated equitably vis-à-vis each other under the Settlement Agreement since the benefits they will receive take "appropriate account of differences among" them, *Moses*, 79 F.4th at 245, and are calculated pursuant to a uniform set of welfare benefit fund rules.

Further, after *Moses*, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 23(e)(2)(D)). In evaluating the substantive fairness of a settlement, courts must not only ensure that a settlement protects "the interests of class representatives who play an active

role in the litigation—often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process—from having absent class members free ride on their efforts," but must also "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (cleaned up) (citation omitted). Here, the three class contribution awards of $1,500 for each of the Plaintiffs who have been involved in the case for more than a decade and have played a role that required frequent interactions with counsel for case-related matters, is reasonable. While there is no "average recovery" amount for a Class Member against which to compare this $1,500 case contribution award, it is reasonable to assume that the dollar amounts for the pension benefits and welfare benefits accrued by each Class Member—based on his or her individualized work history and welfare needs—spans a wide range. An award of $1,500, in absolute terms, is not substantial, and in the context of this case, is unlikely to be "excessive," especially given the positive benefits of the asset transfer to the Settlement Class as a whole, as discussed *supra* Discussion Section I.C.1.

The Settlement thus satisfies the requirements of Rule 23(e)(2)(D).

### 3. Remaining *Grinnell* Factors

Having already considered the first *Grinnell* factor, *see supra* Discussion Section I.C.1, the Court now finds that the Settlement satisfies the remaining eight *Grinnell* factors.

#### a. *Grinnell* Factor 2: Reaction of the Class to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). "Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement."

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) (quoting *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014)). Here, there have been no class member objections. (Smith Decl. ¶¶ 29–30.) Thus, the Court finds that the Settlement, overall, has been well received.

> b.    *Grinnell* Factor 3: State of Proceedings and Amount of Discovery

In considering the third *Grinnell* factor, courts "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phoenix Life Ins. Co.*, No. 14-CV-8714 (CM), 2015 WL 10847814, at *7 (S.D.N.Y. Sept. 9, 2015) (alteration in original) (citation omitted). "While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently [] make . . . an appraisal of the Settlement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (alterations in original) (citations omitted). Here, Class Counsel assert that they have:

> conducted extensive discovery, including production of approximately 100,000 pages of documents, plus comprehensive information from Defendants' contribution database concerning all potential class members. Merits discovery had substantially concluded. Expert reports had been exchanged. Plaintiffs had consulted actuaries to analyze the data and calculate the litigation and settlement value of various proposals and elements of damages.

(Class Counsel Mem. at 11–12.) Taken together, the "stage of proceedings" factor weighs in favor of final approval of the Settlement.

> c.    *Grinnell* Factors 4–6: Risk of Establishing Liability and Damages and Maintaining the Class Action Through Trial

"Litigation inherently involves risks." *Flores*, 104 F. Supp. at 303 (citation omitted). This case is no exception. Plaintiffs would face several substantial risks with respect to recovery if this case were to proceed. Plaintiffs note that at several points in the litigation, "Defendants had

indicated their intention to move to compel additional nonparty discovery, to file yet another motion challenging Plaintiffs' standing to bring these claims, and also to appeal any adverse decision issued by the district court to the Second Circuit." (Class Counsel Mem. at 12.) Although, at the final approval hearing, Defendants clarified they would likely save a second challenge on the standing issue for appeal, (Fairness Hr'g Tr. at 36:22–37:6), there is no dispute that continued litigation in this matter would be protracted and would result in an inordinate and disproportionate expenditure of resources by the parties and the courts. Indeed, were this case to proceed, it could last another 10 years—which would be a great disservice to the class. This factor therefore weighs significantly in favor of final approval of the Settlement.

    d.    *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment

This factor is "typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda*, 462 F. Supp. 3d at 314. Plaintiffs note that Defendant Local 1175 has faced financial challenges in recent years, "which both reduced the funds available for settlement and raised questions concerning that fund's longterm financial viability." (Class Counsel Mem. at 13–14.) The Court thus agrees with Plaintiffs that, under these circumstances, it is unlikely that any future judgment would result in a recovery that is sufficiently higher than the current Settlement, especially given the prospect of costly continued litigation. Accordingly, the Court finds that this factor is both relevant and not contrary to approval of the Settlement.

    e.    *Grinnell* Factors 8 & 9: Range of Reasonableness of the Settlement in Light of the Attendant Risks of Litigation

"The final two *Grinnell* factors[, i.e., the range of reasonableness of the settlement in light of the best possible recovery and all attendant risks,] are typically considered together." *Dial*

*Corp. v. News Corp.*, 317 F.R.D. 426, 432 (S.D.N.Y. 2016). "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The mere "fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Here, Plaintiffs assert that the Settlement "represent[s] a very favorable compromise in relationship to Plaintiffs' maximum anticipated recovery at judgment." (Class Counsel Mem. at 14.) Plaintiffs note that further litigation would include "Defendants' motion practice seeking extensive additional discovery and depositions from non-parties, Defendants' fourth motion challenging Plaintiffs' standing to bring the claim,[4] a motion to revoke class certification, expert depositions and either summary judgment or trial." (*Id.*) Plaintiffs further note that absent Settlement, "Defendants have stated their intent to appeal any adverse district court judgment to the Second Circuit, in an effort to overturn the underlying legal precedent on which Plaintiffs' claims are based." (*Id.*) Given the multitude of legal and factual uncertainties involved in litigation, this factor favors final approval of the Settlement. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *16 (E.D.N.Y. Sept. 9, 2024) ("Plaintiff[] would face several substantial risks of establishing liability and damages and maintaining the class action if this case were to proceed.").

---

[4] As previously noted, Defendants indicated at the final approval hearing that they likely would not file another motion challenging standing in this case, but would renew that argument in any appeal if they were to lose at trial. (Fairness H'rg Tr. at 36:22–37:6.)

## II.     Attorneys' Fees, Litigation Expenses, and Case Contribution Award Request

As previously discussed, this case presents an unusual situation where Plaintiffs' attorneys' fees, costs, and disbursements "have been paid on an ongoing basis during the litigation" by the Local 175 Funds and there are no proposed attorneys' fees before the Court.  (Smith Decl. ¶ 32.) During the final approval hearing, Class Counsel clarified that non-parties Local 175 Pension Fund and Local 175 Welfare Fund were the "two entities that had paid the litigation costs on an ongoing basis" and that, by receiving the full amount of the settlement fund, the two entities will essentially recoup whatever they paid out as attorneys' fees and litigation costs.  (Fairness Hr'g Tr. at 5:7–18.)  During the settlement negotiations, the parties did not specifically delineate the portions of the Settlement amount that could be attributable to attorneys' fees and costs.  (*Id.* at 4:23–5:3.) Instead, the parties simply considered, holistically, whether the Settlement amount was fair and reasonable to both sides.  (*Id.*)  As a general matter, where the amount of attorneys' fees does not factor into the settlement negotiations and does not reduce the recovery of the Settlement Class, courts credit the amount as reasonable.  *See Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (summary order) (affirming reasonableness of $13 million fee award for non-cash settlement where "the fee was negotiated only after settlement terms had been decided and did not . . . reduce what the class ultimately received"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 71 (S.D.N.Y. 2003) (similar).  Here, given that the parties have agreed on an overall settlement that takes into account an amount of attorneys' fees and expenses they believed to be reasonable, the Court will similarly credit their assessment of those fees and expenses as reasonable.

The Court nevertheless notes that Class Counsel's estimate of $1,425,000 in attorneys' fees and costs, (Dkt. 387), is around 30% of the total Settlement Amount of $4,774,026.85.  As courts have previously stated, an attorneys' fees amount of roughly one-third of the total settlement is reasonable on its face.  *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059 (KAM) (SJB), 2024

WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) ("District courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable.").  But because no attorneys' fees have actually been requested in this case, the Court finds that no lodestar "cross-check" or reasonableness analysis applying the *Goldberger* factors is required.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (setting forth six factors that courts must consider in determining the reasonableness of an attorneys' fees request).

### A.    Case Contribution Awards

Class Counsel seek case contribution awards of $1,500 each for the three surviving Plaintiffs.  In determining a fair and appropriate incentive award, courts look to the existence of special circumstances, including:

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).  However, courts should "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members" to "ensure that [such] awards are reasonable and promote equity between class representatives and absent class members."  *Moses*, 79 F.4th at 245.

Here, Plaintiffs' services included, but were not limited to, "informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in their possession; responding to interrogatories; assisting counsel to prepare for depositions; submitting to depositions; participating in evaluation of the proposed settlement terms, and approving the proposed Settlement Agreement."  (Smith Decl. ¶ 37.)  An award of $1,500 for each Plaintiff, totaling $4,500, is thus reasonable.  Indeed, it is lower than what the Court has previously approved for cases of shorter duration and similar complexity.  *See Kurtz v. Kimberly-Clark*, No. 14-CV-

1142 (PKC) (RML) (E.D.N.Y. Dec. 3, 2024), Dkt. 492 (approving class representative award of $10,000 for lead plaintiff in a case lasting over ten years); *Schutter*, 2024 WL 4118465, at \*17 (approving incentive awards of $10,000 to the lead plaintiff and $2,500 to each of two named plaintiffs in a case lasting three and a half years).

## CONCLUSION

For the reasons stated above, the Court hereby finally approves the Settlement Amount of $4,774,026.85, of which the parties acknowledge that $2,324,026.85 has already been paid and the remaining $2,450,000 is to be paid by Defendants in the manner and within the time specified in the Settlement Agreement. In addition, the Court approves the request for $1,500 in case contribution awards to each of the surviving Plaintiffs Ralph Hoeffner, Anthony Longo, and Anthony Tomaszewski. All Settlement Class Members shall accordingly be bound by the terms of the agreed-upon release of all claims resolved by the Settlement Agreement. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 2, 2025
      Brooklyn, New York